UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SERGEI LAPSHIN, | CASE NO. C25-2245-KKE |
| Petitioner(s), | ORDER GRANTING HABEAS PETITION |
| v. | |
| PAMELA BONDI, et al., | |
| Respondent(s). | |

Petitioner Sergei Lapshin is a citizen and national of Russia detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Lapshin was taken into custody U.S. Immigration and Customs Enforcement ("ICE") on April 1, 2024, and ordered deported to Russia on November 5, 2024. On April 4, 2025, following an unsuccessful appeal, Lapshin's removal order became final. Having been detained for over eight months since his order of removal became final, Lapshin now seeks relief from this Court to obtain his release from immigration detention, an order preventing removal to a third country without notice and due process, and an order barring removal to an unknown third country. Dkt No. 1 at 3. For the reasons stated below, the Court will grant Lapshin's habeas petition in part.

ORDER GRANTING HABEAS PETITION - 1

# I. BACKGROUND

## A. Lapshin's Order of Removal

Petitioner Lapshin is a Russian citizen and national. Dkt. No. 1 at 4; Dkt. No. 12-3 at 2. In 2024, Lapshin fled Russia and attempted to cross the United States border through Mexico. Dkt. No. 1 at 5. On April 1, 2024, Lapshin was detained at a port of entry in Tecate, Mexico and held in custody because he lacked valid entry documents. Dkt. No. 12-2 at 2–3. On the same day, Lapshin was found inadmissible to the United States, and subject to removal. Dkt. No. 12-3 at 2.

On May 15, 2024, the Department of Homeland Security served Lapshin with a Notice to Appear and initiated removal proceedings. Dkt. No. 12-4 at 2. On June 6, 2024, Petitioner filed an application for asylum, withholding removal, and protection under the Convention Against Torture ("CAT"). Dkt. No. 11 ¶ 6. On November 5, 2024, an immigration judge denied each of Lapshin's applications and ordered Lapshin be removed to Russia. Dkt. No. 12-4 at 14. The Board of Immigration Appeals affirmed that decision, rendering Lapshin's order of removal "final" on April 4, 2025. Dkt. No. 12-5 at 2–4. On April 25, 2025, Petitioner's travel document request was "completed," although Respondents do not explain what "completed" means—i.e., whether the request has been sent to another office within ICE for further review, or to the Russian government for its consideration. Dkt. No. 10 at 5, Dkt. No. 11 ¶ 14.

On July 15, 2025, Lapshin was transferred to the NWIPC due to limited bed space. Dkt. No. 11 ¶ 17. To date, Lapshin has been detained for 20 months since he entered the United States, and eight months from the issuance of his final order of removal.

## B. Lapshin's Travel Document Request

In a declaration submitted by Respondents, Deportation Officer Cristhian De Castro asserted that "Russia is ready to issue a travel document upon completion of the citizenship verification process." Dkt. No. 11 ¶ 19. He explained that travel documents are "issued during an

in-person interview" during which "the citizen must consent to the issuance of the travel document or the Russian official will not issue [it]." *Id.* Officer De Castro did not indicate if Lapshin's interview has been scheduled. Additional "review" beyond the interview appears to be necessary based on Officer De Castro's explanation, although it is unclear who will conduct that review, or how much time it takes to initiate the review following completion of an interview. *See id.* Officer De Castro provided only that "[t]he review process generally takes over 30 days unless the citizen requests for expedited issuance." *Id.* Officer De Castro also stated that ICE "followed up" on Lapshin's travel document on two occasions—once on June 27, 2025, and again on November 22, 2025—but he did not embellish on whether Russia responded to ICE, or provide any further updates on the status of Lapshin's travel document request. *See* Dkt. No. 11 ¶¶ 16, 18.

Finally, Officer De Castro observed that, as a general matter, "ICE removed 1,273 Russian citizens to Russia during fiscal year 2025 as of September 13, 2025." Dkt. No. 11 ¶ 19. Respondents do not specify how long it took for Russia to effectuate any of those removals.

Lapshin rebuts Respondents' characterization of removals of Russian nationals by asserting that Russia is "uncooperative" in effectuating the removal of its citizens from the United States. *See* Dkt. No. 1 at 14, Dkt. No. 13 at 3, Dkt. No. 13-1 at 8. In a November 2024 publication by ICE Enforcement and Removal Operations, several countries were classified as either "uncooperative" or "at-risk of non-compliance," based on "[l]ack of cooperation … in accepting the return of their nationals." Dkt. No. 13-1 at 8. ICE classified Russia as "uncooperative." *Id.* In that document, ICE explained that

> Factors that could lead to a country being classified as uncooperative include hindering ICE's removal efforts by refusing to conduct consular interviews when necessary; refusing to accept charter removal missions; having an unacceptable ratio of releases when compared to removals and/or unacceptable average time from executable final order of removal to removal; and/or denying or delaying issuance of travel documents, such as passports.

ORDER GRANTING HABEAS PETITION - 3

*Id.* n.4.

## II.   DISCUSSION

### A.   Legal Standard

#### 1. Habeas petition

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A district court's habeas jurisdiction includes challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

#### 2. Detention of noncitizens who are ordered removed

Detention of noncitizens following an order of removal is governed by the INA.  "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682.  During the 90-day removal period, the Government "shall detain" the noncitizen.  8 U.S.C. § 1231(a)(2)(A).  Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6).  "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699.  "A statute permitting

indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention on an order of supervision (OSUP). *Id.*; *see also* 8 U.S.C. § 1231(a)(3) (setting forth required conditions of supervision where a noncitizen "is not removed within the removal period").

**B.      Lapshin's Prolonged Detention is Unlawful.**

Lapshin is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months, Lapshin's detention is not "presumptively reasonable." *Id.* at 701. Through his petition and reply, Lapshin has provided evidence showing that ICE has made no progress towards obtaining his travel document in over eight months (Dkt. No. 1 at 14; Dkt. No. 11 ¶¶ 13–19 (Officer De Castro declaration providing no update on Lapshin's travel document request apart from its completion on April 25, 2025)), and that it is unlikely that Russia will process Lapshin's travel documents in the reasonably foreseeable future, as Russia is "uncooperative" in effectuating removals (Dkt. No. 13-1 at 7–8). He has also shown that, to date, ICE has not obtained a travel document from Russia despite completion of the travel document request on April 25, 2025, and that additional steps—including a required interview that appears not to have been scheduled—are required for Russia to process the request. Dkt. No. 1 at 5; Dkt. No. 11 ¶ 19.

Accordingly, Lapshin "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondents suggest that Lapshin's removal is likely to occur in the reasonably foreseeable future because (1) "ICE is actively working to obtain a travel document to remove him to Russia," and "Russia has clearly engaged in back-and-forth requests for documents," and (2) ICE's efforts have been slowed by Lapshin's "own delay" in completing this travel documents. Dkt. No. 10 at 7–8. These representations are insufficient to rebut Lapshin's showing.

Respondents' contention that both ICE and Russia are actively engaged as to Lapshin's request is overstated. To the contrary, none of Respondents' factual representations show that Russia has engaged with ICE at all with respect to Lapshin's travel document request. First, it is unclear whether the travel document request has been submitted to the Russian government. *See* Dkt. No. 11 ¶ 14 (noting only that Lapshin's travel document request was "completed," but not indicating if it had been sent to Russia). And though ICE has apparently requested updates as to Lapshin's travel document request, Respondents provided no indication that anyone responded to those requests, nor did Respondents provide any substantive updates on Lapshin's travel document request. *See id.* ¶¶ 16, 19. As another example, though Respondents assert that an interview and review process must take place prior to issuance of a travel document, they do not indicate whether Lapshin's interview has been scheduled, or how long it takes to begin the review process after an interview is completed. Finally, Respondents do not contest Lapshin's assertion that Russia is "uncooperative" in effectuating the removal of its citizens. Instead, Respondents rely only upon the general assertion that ICE has removed "1,273 Russian citizens to Russia during fiscal year 2025 as of September 13, 2025." Dkt. No. 11 ¶ 19. But Respondents "[do] not clarify whether

travel documents *issued* in FY2025 were also *requested* in FY2025, or if they include requests made in previous fiscal years." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 726 (W.D. Wash. 2025). "Merely noting that Russia has issued travel documents in other cases sheds little light on this case." *Tairov v. Bondi*, C25-1558-RSM-MLP, 2025 WL 3538073, at *3 (W.D. Wash. Dec. 3, 2025), *report and recommendation adopted*, C25-1558-RSM-MLP, 2025 WL 3541732 (W.D. Wash. Dec. 10, 2025).

The Court is also unpersuaded by Respondents' contention that Lapshin has delayed his own travel document issuance. Respondents state that Lapshin was given the travel document application on April 7, 2025, and completed the application approximately two weeks later, on April 23, 2025. ICE then "completed" the request on April 25, 2025. Dkt. No. 10 at 5. Thus, any "delay" caused by Lapshin completing his application accounts for approximately two weeks, while the remaining 7.5 months is attributable to processing by ICE and/or the Russian government.

Despite Respondents' contentions, Lapshin has now been detained for over six months, ICE has seemingly not yet scheduled an interview, and Russia has not issued the travel documents necessary to effectuate his removal. "ICE is not permitted to hold [Lapshin] indefinitely while it waits for travel documents from [Russia]." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025). The Court will therefore grant Lapshin's habeas petition and order his release.

C.   **Lapshin's Request for Injunctive Relief**

Lapshin also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event the Government attempts to remove him to a country other than Russia. Dkt. No. 1 at 16–17. For instance, he requests an order enjoining Respondents from removing him to a third country without notice and a meaningful opportunity to respond. *Id.* at 16. He further

requests an order that Respondents not remove him "to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects[.]" *Id.* at 17. Because he invoked its habeas and federal question jurisdiction, the Court could provide equitable relief on those claims if Lapshin met the standard for a permanent injunction. *See* Dkt. No. 1 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Indeed, this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief. *See e.g.*, *Kumar v. Wamsley*, C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *Baltodano v. Bondi*, C25- 1958RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Bondi*, 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

    1.  <u>Lapshin's request to enjoin third-country removal is denied without prejudice.</u>

Here, Respondents argue Lapshin's third-country removal claim is speculative and premature, as ICE seeks only to remove Lapshin to Russia, and there is no evidence that Lapshin faces an individual threat of third-country removal. Dkt. No. 10 at 8. The Court agrees with Respondents that, on this record, Lapshin has not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief in the form of an order prohibiting Respondents from removing Lapshin to "any third country." *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at *9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country); *cf. Aden v. Nielsen*, 409 F. Supp. 3d 998, 1001 (W.D. Wash. 2019) (considering due process claim after ICE began seeking travel documents for third-country removal); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 736–37 (W.D. Wash. 2025) (discussing evidence and argument supporting claimed threat of third-country removal). In his

ORDER GRANTING HABEAS PETITION - 8

traverse, Lapshin provides no additional facts specific to his circumstances that support enjoining Respondents from removing him to "any third country," such as identifying a target third country where he might suffer persecution or torture. Unlike cases where courts have enjoined removal to a third country, in this case, Lapshin suggests he would prefer to be removed to a particular third country—Argentina—rather than his native Russia, to which he "is afraid of returning." *See* Dkt. No. 1 at 5. Courts that have found third-country removal to be unconstitutionally punitive, and enjoined such removal on that basis, have made findings that "were specific to a particular population and particular destination countries." *Arenado-Borges v. Bondi*, 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (denying petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive); *see also Elshourbagy v. Bondi*, 2:25-CV-02432-TL, 2025 WL 3718993, at *9–10 (W.D. Wash. Dec. 23, 2025) (same). The record does not contain adequate information for this Court to make such findings here.

2. <u>Lapshin is entitled to notice before any attempted third-country removal.</u>

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with 8 U.S.C. § 1231(b) and the Due Process Clause. *Aden*, 409 F. Supp. 3d at 1019; *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). Courts in this district have held that where the government intends to seek removal to a third country, due process requires, among other things, "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)." *Aden*, 409 F. Supp. 3d at 1019; *see Arenado-Borges*, 2025 WL 3718993, at *6–7 (collecting cases and requiring the government to provide notice and a meaningful opportunity to respond in the event of third-country removal). Against this legal backdrop, and in support of his request for an order requiring notice of any third-country removal,

ORDER GRANTING HABEAS PETITION - 9

Lapshin cites a July 9, 2025 ICE policy memo, which allows for deportation of individuals to third countries "without any procedures for notice or an opportunity to be heard." Dkt. No. 1 at 11. Lapshin further argues that the Government has targeted individuals with criminal convictions for third-country removal. *Id.* at 16. Respondents neither rebut Lapshin's arguments as to notice, nor his factual assertions as to the ICE policy memo or its practices. *See* Dkt. No. 10 at 8 (addressing only Lapshin's argument that he "could be removed to a third country").

The Court finds the reasoning in *Aden* to be persuasive, and that the procedures set forth in the ICE policy memo fall well short of what the *Aden* court and others in this district have held that due process, and the statute, require. Thus, should Respondents take steps to remove Lapshin to a country other than Russia, they must provide Lapshin with written notice of their intent to do so and a meaningful opportunity to respond.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Lapshin's petition for writ of habeas corpus (Dkt. No. 1).

1) Respondents are ORDERED to release Lapshin from custody in compliance with 8 U.S.C. § 1231. Within **FORTY-EIGHT (48) HOURS** of issuance of this Order, Respondents must provide the Court with a declaration confirming Lapshin has been released from custody.
2) Should Respondents take steps to remove Lapshin to a third country, they must provide written notice to Lapshin and all counsel of record at least ten days prior to the removal.

Dated this 9th day of January, 2026.

Kymberly K. Evanson
United States District Judge